UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUZANNE MARIE RAU,<br><br>        Plaintiff,<br><br>      v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>        Defendant. | Case No.  14-cv-03534-DMR<br><br>**ORDER ON CROSS MOTIONS FOR<br>SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 19, 24 |

Plaintiff Suzanne Marie Rau moves for summary judgment to reverse the Commissioner of the Social Security Administration's (the "Commissioner's") final administrative decision, which found Plaintiff not disabled and therefore denied her application for benefits under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.* The Commissioner cross-moves to affirm. For the reasons stated below, the court grants Plaintiff's motion and denies the Commissioner's motion, and remands the action for payment of benefits.

## I.     PROCEDURAL HISTORY

Plaintiff filed an application for Social Security Disability Insurance (SSDI) benefits on July 13, 2011 (Administrative Record ("A.R.") 182-83), which was initially denied on October 28, 2011 and again on reconsideration on April 18, 2012. A.R. 116-21, 123-29. On May 11, 2012, Plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ"). A.R. 130-31. At the December 17, 2012 hearing, Plaintiff amended the alleged disability onset date to November 23, 2009. A.R. 20.

After the hearing, ALJ K. Kwon issued a decision finding Plaintiff not disabled. A.R. 17-34. The ALJ determined that Plaintiff has the following severe impairments: chronic pain syndrome and chronic fatigue of uncertain etiology, diabetes mellitus, type 2, hypertension, post-traumatic stress disorder ("PTSD"), and major depressive disorder with generalized anxiety. The

ALJ found that Plaintiff retains the residual functional capacity ("RFC") to perform "light work as defined in 20 CFR 404.1567(b) except with preclusion from direct interaction with the general public and the need to avoid tandem work," and that Plaintiff could perform her past relevant work as a meter reader and general office clerk.  A.R. 22, 23.  The ALJ also relied on the opinion of a vocational expert ("VE") who testified that an individual with such an RFC could perform other jobs existing in the economy, including cleaner, hand packer, and packing machine tender.  A.R. 27-29.  Accordingly, the ALJ concluded that Plaintiff is not disabled.  A.R. 29.

The Appeals Council denied Plaintiff's request for review on June 17, 2014.  A.R. 2-7.  The ALJ's decision therefore became the final decision of the Commissioner.  *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1231 (9th Cir. 2011).  Plaintiff then filed suit in this court pursuant to 42 U.S.C. § 405(g).

## II.      THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents her from engaging in substantial gainful activity and that is expected to result in death or to last for a continuous period of at least twelve months.  *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)).  The impairment must render the claimant incapable of performing the work she previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. The steps are as follows:

1.      At the first step, the ALJ considers the claimant's work activity, if any.  If the claimant is doing substantial gainful activity, the ALJ will find that the claimant is not disabled.

2.      At the second step, the ALJ considers the medical severity of the claimant's impairment(s).  If the claimant does not have a severe medically determinable physical or mental impairment that meets the duration requirement in [20 C.F.R.] § 416.909, or a combination of

2

United States District Court
Northern District of California

impairments that is severe and meets the duration requirement, the ALJ will find that the claimant is not disabled.

3.      At the third step, the ALJ also considers the medical severity of the claimant's impairment(s).  If the claimant has an impairment(s) that meets or equals one of the listings in 20 C.F.R., Pt. 404, Subpt. P, App. 1 [the "Listings"] and meets the duration requirement, the ALJ will find that the claimant is disabled.

4.      At the fourth step, the ALJ considers an assessment of the claimant's residual functional capacity ("RFC") and the claimant's past relevant work.  If the claimant can still do his or her past relevant work, the ALJ will find that the claimant is not disabled.

5.      At the fifth and last step, the ALJ considers the assessment of the claimant's RFC and age, education, and work experience to see if the claimant can make an adjustment to other work.  If the claimant can make an adjustment to other work, the ALJ will find that the claimant is not disabled.  If the claimant cannot make an adjustment to other work, the ALJ will find that the claimant is disabled.

20 C.F.R. § 416.920(a)(4); 20 C.F.R. §§ 404.1520; *Tackett*, 180 F.3d at 1098-99.

**III.      FACTUAL BACKGROUND**

**A.  Plaintiff's Testimony**

The record contains the following information.  Plaintiff was born in 1962.  She is married and lives with her husband.  A.R. 42.  She last worked in 2011 as a switchboard operator, a job that she held for only one month.  Plaintiff quit that job because she felt bullied by her coworkers. A.R. 42-44.  She has held 20 or more jobs since 2004, and has experienced the same problem of feeling bullied at every one of them.  Plaintiff testified that she realizes that "it's probably [her] because [she] . . . [has] the same issues all the time," i.e., a cycle of physical and mental health problems that quickly lead to a meltdown:

> When I start the job I'm already feeling bad, and then after about
> three or four weeks I just pretty much collapse like have a, have a
> meltdown at the job, and I'm feeling so vulnerable and I, I really

3

1

feel bullied you know . . .

2    A.R. 45.  She explained that before starting each new position, she would feel exhausted due to

3    chronic fatigue, insomnia, and depression, and "would end up calling in sick like the first week I

4    was there," and after two to three weeks, she would feel exhausted and vulnerable.  A.R. 48-49.  In

5    the past twelve years, the longest job she has held was a position as a call center service

6    representative at a telephone company from 2000 to 2004.  A.R. 45.  Plaintiff had "horrible

7    fatigue" and called in sick every week, and in 2004, had a nervous breakdown or "meltdown" in

8    that position.  A.R. 46, 49.

9         Plaintiff described another position she held for several months in 2008-2009 at Santa

10   Rosa Junior College, which involved the performance of administrative duties in an office setting.

11   She found the tasks "mentally challenging [and] hard," and felt physically exhausted.  A.R. 50-51,

12   216.  She also experienced bullying by her coworkers.  A.R. 52.  Plaintiff testified that she has felt

13   suicidal many times due to her inability to hold a job, stating that she "was used to really taking

14   care of myself and being independent."  A.R. 53.  Plaintiff's goal is to work at least part-time from

15   home, due to her unpredictable health issues.  A.R. 59.

16        After Plaintiff's 2004 resignation from the telephone company, she started to retrain to

17   become a medical assistant.  The program required completion of 60 units, along with a 120-hour

18   internship.  Due to her health issues, it took her seven years to complete the program (2004 to

19   2011) because she was unable to take more than six units (two classes) at one time.  A.R. 60-63.

20   She received assistance through the school's disability resources center and was able to tape

21   record classes and take breaks from classes whenever she needed.  A.R. 62.  She received an

22   Associate's Degree from Santa Rosa Junior College in 2011.  Plaintiff completed her internship by

23   working part time at a doctor's office in the summer of 2010.  A.R. 63-64.  The work mainly

24   consisted of filing, and she occasionally was permitted to groom a patient.  A.R. 65.  Plaintiff

25   testified that the internship was "exhausting" and that she felt bullied, but that she was able to

26   complete the internship and called in sick only once.  A.R. 64.

27

28

United States District Court
Northern District of California

4

United States District Court
Northern District of California

1   Plaintiff testified that she is unable to work full time because of her "energy level," and

2   that it is difficult for her to keep commitments because she never knows how she will feel day to

3   day. A.R. 66. She attributes her inability to work to her chronic fatigue. A.R. 66. On a typical

4   day, she gets out of bed slowly because she is often dizzy when she gets up. After brushing her

5   teeth and using the restroom, she usually goes back to bed to lie down. A.R. 67. On days when

6   she is feeling okay, approximately twice a week, she gets up and does chores such as putting

7   dishes in the dishwasher or making her bed, and feeding her pets. She then has to go back to bed

8   after performing these tasks. A.R. 67. If she feels okay, she showers and dresses and takes her

9   dog for a short walk. However, more often than not, she cannot go out and cannot do many chores

10  due to her physical and mental fatigue. A.R. 67. If she hasn't slept well, she feels physical

11  fatigue; otherwise, "it's just kind of a flat kind of general fatigue" that she experiences. A.R. 67–

12  68. She estimates that she is able to take her dog for a walk two or three times per week. A.R. 68.

13  Plaintiff cooks once a week and eats leftovers, frozen food, or something "easy to do" like a bagel.

14  A.R. 69. She drives to the store once or twice a month. A.R. 70.

15  Plaintiff usually goes to bed around 11:00 p.m. and sleeps until 3:00 a.m. She is unable to

16  go back to sleep until 5:00 or 6:00 a.m., and then sleeps until 11:00 a.m. A.R. 70. She naps every

17  day for two to three hours. She has tried giving up naps, but that makes her feel "just miserable"

18  due to her fatigue. A.R. 69-70. Plaintiff testified that she has been clean and sober for 14 years.

19  She used to go to AA meetings once or twice a week, but her anxiety caused her to decrease her

20  attendance to once per month. She stopped attending meetings altogether in 2011 due to her social

21  anxiety. A.R. 70-71.

22  Plaintiff testified that she sees Dr. Sunjya Schweig only twice per year, since his treatment

23  is not covered by her insurance. A.R. 56. Therapy is also not covered by her insurance, so she has

24  sought mental health therapy from multiple sources, including sliding scale or free clinics. A.R.

25  56-58. Her insurance only offers group therapy, which is challenging for her because of her

26  anxiety. A.R. 58-59.

27

28

5

**B.  Plaintiff's Relevant Medical History**

      **1.  Dr. Sunjya Schweig**

Sunjya Schweig, M.D. completed a residual functional capacity questionnaire on October 30, 2012.  A.R. 1272-77.  Dr. Schweig noted that Plaintiff is currently under his care.  He stated that he first saw Plaintiff in March 2010, and that he has seen her "sporadically" since that time, with her last visit on October 9, 2012.  A.R. 1273.  Dr. Schweig diagnosed Plaintiff with chronic fatigue and immune dysfunction syndrome (CFIDS), and noted that "CFIDS is a legitimate medical condition, recognized by the CDC, which is unusual because its diagnosis *does not depend on objective laboratory or physical exam findings*.  The diagnosis is based entirely on subjective complaints, after excluding other recognized medical conditions."[1]  A.R. 1273 (emphasis in original).  He also noted Plaintiff's diagnoses of Type 2 diabetes, hypertension, hyperlipidemia, severe insomnia/sleep disruption, depression, PTSD/trauma, and anxiety.  A.R. 1273.

Dr. Schweig indicated that he had excluded other impairments as a cause for Plaintiff's fatigue, including HIV/AIDS, malignancy, Lyme disease, rheumatoid arthritis, and drug or alcohol addiction, noting that Plaintiff has been clean and sober for 14 years.  He also noted that Plaintiff suffers from depression and anxiety that is managed by psychiatry, and stated his belief that Plaintiff's chronic fatigue is not caused by her medications since the condition predated her use of medications.  A.R. 1274.  He stated that Plaintiff's symptoms are "[s]elf-reported impairment in short-term memory or concentration severe enough to cause substantial reduction in previous levels of occupational, educational, social or personal activities," muscle pain, "[h]eadaches of a new type, pattern or severity," and "[u]nrefreshing sleep," all of which are consistent with a CFIDS diagnosis.  Dr. Schweig also indicated that Plaintiff is not a malingerer.  A.R. 1274.  Further, Dr. Schweig stated that Plaintiff's "difficulty tolerating stressful situations . . . greatly

---

[1] The parties do not explain any distinction between CFIDS and chronic fatigue, one of Plaintiff's severe impairments as found by the ALJ.  Accordingly, the court will use CFIDS, chronic fatigue, and chronic fatigue syndrome interchangeably in this opinion.

United States District Court
Northern District of California

exacerbates her fatigue, anxiety, and insomnia." A.R. 1275.

Dr. Schweig opined that Plaintiff is "[i]ncapable of even 'low stress' jobs," explaining the following symptom cycle:

> Patient is able to work for 1-3 days in a normal work environment and then experiences markedly increased fatigue and anxiety. The symptoms [combine] to create severe insomnia [at] which point her symptoms spiral out of control. She then develops increased dysfunction and worsening of her overall symptoms.

A.R. 1275. He stated that Plaintiff is able to sit for one to two hours before needing to get up, stand for one hour before needing to sit down or walk around, and that in an eight-hour workday, Plaintiff can sit for three to four hours and stand/walk for one to two hours. A.R. 1275.

Dr. Schweig opined that Plaintiff will need to take three to four unscheduled breaks during an eight-hour workday, and that she will have to rest for two hours before returning to work because she "needs frequent breaks/naps." On such a break, she will need to lie down. A.R. 1276. Additionally, Dr. Schweig opined that Plaintiff's impairments are "likely to produce 'good days' and 'bad days,'" and that she is likely to be absent from work three or more days per month. A.R. 1276-77. Finally, he stated that Plaintiff "experiences blood sugar imbalances with hypoglycemia episodes that resulted in change in her cognitive function and ability," which can be unpredictable. A.R. 1277.

### 2.  Dr. Frank Chen

Consultative examiner Frank Chen, M.D., performed a comprehensive internal medicine evaluation of Plaintiff on April 14, 2010. A.R. 500-503. Dr. Chen diagnosed chronic pain syndrome and "chronic fatigue of unknown etiology," along with diabetes mellitus, type 2, and hypertension. A.R. 503. Dr. Chen likely reviewed at least a few of Plaintiff's medical records as part of the exam; the sentence "No medical records available for review" is struck through on the report, and there is an arrow pointing to handwritten notes of what appear to be previous diagnoses and/or examination results. A.R. 502. Dr. Chen opined that Plaintiff can stand and walk for six hours in an eight-hour workday, sit for six hours in an eight-hour workday, and lift and carry 20

7

pounds occasionally and 10 pounds frequently.  He noted "[t]here are no other functional limitations on a medical basis."  A.R. 503.

Dr. Chen performed a second evaluation of Plaintiff on October 7, 2011.  A.R. 632-36.  Dr. Chen noted that Plaintiff reported having "less body pain" since the April 2010 exam.  A.R. 634, 635.  He also noted Plaintiff's history of migraine headaches, which Plaintiff was able to relieve with medication.  A.R. 634.  He again opined that Plaintiff could stand and walk for six hours in an eight-hour workday and could sit for six hours in an eight-hour workday.  Dr. Chen opined that Plaintiff can lift and carry 50 pounds occasionally and 25 pounds frequently, and that there were no other functional limitations.  A.R. 636.

### 3. Kaiser and Other Treatment Records

The record contains voluminous treatment records from Kaiser, Plaintiff's health care provider, dated from 2004 to 2012.  A.R. 361-499, 570-616, 650-1115, 1153-1271.  The record also contains various mental health treatment records, including providers' opinions about Plaintiff's mental limitations.  A.R. 504-09, 538-543, 617-31, 1126-1134, 1149-1152, 1284-1288. The court does not discuss the mental health treatment records at any length because Plaintiff does not challenge the ALJ's weighing of the opinions of mental healthcare providers in the record, including the ALJ's decision to give minimal weight to Alice Kagan, M.D.'s opinion about Plaintiff's mental limitations.

## IV.  STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits.  The ALJ's underlying determination "will be disturbed only if it is not supported by substantial evidence or it is based on legal error." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (internal quotation marks omitted). "Substantial evidence" is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is "more than a mere scintilla" but less than a preponderance.  *Id*.  When performing this analysis,

the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citation and quotation marks omitted).

If the evidence reasonably could support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). The ALJ is responsible for determining credibility and resolving conflicts in medical testimony, resolving ambiguities, and drawing inferences logically flowing from the evidence. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984); *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982); *Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984). "Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

## V.     ISSUES PRESENTED

1.     Whether the ALJ erred in weighing the medical opinions; and

2.     Whether the ALJ erred in rejecting Plaintiff's testimony.

## VI.     DISCUSSION

### A.   The ALJ's Evaluation of the Medical Opinions

Plaintiff first argues that the ALJ erred in weighing the medical opinions. Specifically, she argues that the ALJ erred in giving minimal weight to the opinion of treating physician Dr. Schweig in favor of the opinion of non-treating physician Dr. Chen.[2]

#### 1.  Legal Standard

Courts employ a hierarchy of deference to medical opinions based on the relation of the doctor to the patient. Namely, courts distinguish between three types of physicians: those who

---

[2] As noted above, Plaintiff does not challenge the ALJ's weighing of any other medical opinions in the record.

treat the claimant ("treating physicians") and two categories of "nontreating physicians," those who examine but do not treat the claimant ("examining physicians") and those who neither examine nor treat the claimant ("non-examining physicians"). *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). A treating physician's opinion is entitled to more weight than an examining physician's opinion, and an examining physician's opinion is entitled to more weight than a non-examining physician's opinion. *Id.*

The Social Security Act tasks the ALJ with determining credibility of medical testimony and resolving conflicting evidence and ambiguities. *Reddick*, 157 F.3d at 722. A treating physician's opinion, while entitled to more weight, is not necessarily conclusive. *Magallanes*, 881 F.2d at 751 (citation omitted). To reject the opinion of an uncontradicted treating physician, an ALJ must provide "clear and convincing reasons." *Lester*, 81 F.3d at 830; *see, e.g.*, *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995) (affirming rejection of examining psychologist's functional assessment which conflicted with his own written report and test results); *see also* 20 C.F.R. § 416.927(d)(2); SSR 96-2p, 1996 WL 374188. If another doctor contradicts a treating physician, the ALJ must provide "specific and legitimate reasons" supported by substantial evidence to discount the treating physician's opinion. *Lester*, 81 F.3d at 830. "This is so because, even when contradicted, a treating or examining physician's opinion is still owed deference and will often be 'entitled to the greatest weight . . . even if it does not meet the test for controlling weight.'" *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting *Orn v. Astrue*, 495 F.3d 625, 633 (9th Cir. 2007)). The ALJ meets this burden "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick*, 157 F.3d at 725. "[B]road and vague" reasons do not suffice. *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989). This same standard applies to the rejection of an examining physician's opinion as well. *Lester*, 81 F.3d at 830-31.

A non-examining physician's opinion alone cannot constitute substantial evidence to reject the opinion of an examining or treating physician, *Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th

10

1    Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984), though a non-examining

2    physician's opinion may be persuasive when supported by other factors.  *See Tonapetyan v.*

3    *Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (noting that opinion by "non-examining medical

4    expert . . . may constitute substantial evidence when it is consistent with other independent

5    evidence in the record"); *Magallanes*, 881 F.2d at 751-55 (upholding rejection of treating

6    physician's opinion given contradictory laboratory test results, reports from examining physicians,

7    and testimony from claimant).  An opinion that is more consistent with the record as a whole

8    generally carries more persuasiveness.  *See* 20 C.F.R. § 416.927(d)(4).

9                      **2.   Analysis**

10           In October 2012, Dr. Schweig, who is one of Plaintiff's treating physicians, opined that

11   Plaintiff suffers from CFIDS, along with Type 2 diabetes, hypertension, hyperlipidemia, severe

12   insomnia/sleep disruption, depression, PTSD/trauma, and anxiety, and that she is "[i]ncapable of

13   even 'low stress' jobs" due to her limitations.  A.R. 1273-75.  The ALJ found that Plaintiff has,

14   *inter alia*, chronic pain syndrome and "chronic fatigue of uncertain etiology."  A.R. 22.[3]

15   However, the ALJ gave minimal weight to Dr. Schweig's opinion about Plaintiff's limitations,

16   apparently in favor of Dr. Chen's opinions following his April 2010 and October 2011

17   consultative examinations.  Dr. Chen opined that Plaintiff can stand and walk for six hours in an

18   eight-hour workday, and his April 2010 opinion that Plaintiff can lift and carry 20 pounds

19   occasionally and 10 pounds frequently, with no other functional limitations.  A.R. 503, 636.  Since

20   Dr. Chen's opinion contradicts Dr. Schweig's opinion, the ALJ was required to provide "specific

21   and legitimate" reasons supported by substantial evidence to reject Dr. Schweig's opinion.  *Lester*,

22   81 F.3d at 830-31.

---

[3] Plaintiff focuses on a diagnosis of "chronic fatigue syndrome/fibromyalgia," and argues that the ALJ did not understand "the debilitating effect of fibromyalgia."  Pl.'s Mot. at 6-8.  While Plaintiff's Kaiser medical records indicate a working diagnosis of fibromyalgia since 2010, (*see* A.R. 423, 434, 674, 707, 762, 763, 812), the ALJ did not find that Plaintiff has the severe impairment of fibromyalgia.  Moreover, Plaintiff offered no authority or argument that the disorders should be treated as one impairment for purposes of the disability analysis. Accordingly, the court will focus on the relevant severe impairments explicitly found by the ALJ.

11

United States District Court
Northern District of California

1      In discounting Dr. Schweig's opinion, the ALJ stated that it was unclear whether Dr.

2  Schweig rises to the status of "treating physician" due to his lack of frequent contact with Plaintiff.

3  The ALJ noted that it was not clear whether Dr. Schweig was aware of Plaintiff's "considerable"

4  activities, which "appear inconsistent with Dr. Schweig's opined extreme limitations." A.R. 26.

5  The ALJ also stated that Dr. Schweig had not recommended more aggressive medical treatment or

6  referred Plaintiff for further work-up with specialists "to indicate a greater level of concern," and

7  that Dr. Schweig's opinion appeared to be "inordinately based upon" Plaintiff's subjective

8  complaints. A.R. 26. Finally, the ALJ held that "to the extent that the medical records do not

9  support [Dr. Schweig's] opinion, the undersigned finds that Dr. Schweig is acting more as an

10  advocate for [Plaintiff's] social security benefits rather than as an objective medical practitioner."

11  A.R. 26.

12      The court finds that the ALJ did not provide specific and legitimate reasons supported by

13  substantial evidence to reject Dr. Schweig's opinion. As to the ALJ's premise that Dr. Schweig's

14  opinion should be discounted because it is based on Plaintiff's subjective complaints, the Ninth

15  Circuit has rejected such reasoning as "ill-suited" to a case involving chronic fatigue syndrome,

16  because it "runs counter to the [Centers for Disease Control's] published framework for evaluating

17  and diagnosing [chronic fatigue syndrome]." *See Reddick*, 157 F.3d at 726. The Ninth Circuit

18  described chronic fatigue syndrome, or CFS, as follows:

19           Chronic fatigue is defined as "*self-reported* persistent or relapsing
              fatigue lasting six or more consecutive months." Centers for Disease
20           Control, The Chronic Fatigue Syndrome: A Comprehensive
              Approach to its Definition and Study, 121 *Annals of Internal*
21           *Medicine* 954 (1994) (emphasis added). Although CFS is
              accompanied by symptoms such as body aches, low-grade fevers,
22           memory problems, headaches, and extended flu-like symptoms,
              which Claimant manifested, the presence of persistent fatigue is
23           necessarily self-reported. The final diagnosis is made "by
              exclusion," or ruling out other possible illnesses.
24

25  *Id.* Dr. Schweig's opinion indicates that he has specifically excluded other impairments as a cause

26  for Plaintiff's fatigue, including HIV/AIDS, malignancy, Lyme disease, rheumatoid arthritis, and

27                                          12

28

United States District Court
Northern District of California

United States District Court
Northern District of California

1    other medications, (A.R. 1274), and the record contains Dr. Schweig's treatment-related lab test

2    results for Plaintiff.  *See* A.R. 521-35.  Plaintiff's extensive Kaiser medical records are replete

3    with evidence that Plaintiff sought medical attention for fatigue, headaches, insomnia, and pain, all

4    of which are consistent with the recognized symptoms of chronic fatigue syndrome.  *See Reddick*,

5    157 F.3d at 726; *see, e.g.*, A.R. 374, 377, 420, 426, 661, 669, 675, 680, 704, 707, 720, 762, 829,

6    1104.  In accordance with the Ninth Circuit's guidance in *Reddick*, the ALJ erred by discounting

7    Dr. Schweig's CFIDS opinion because it was based on Plaintiff's subjective complaints.

8         The ALJ also noted that it was unclear if Dr. Schweig rose to "treating physician" status,

9    as Plaintiff sees Dr. Schweig only "every six months or so" because that is all she can afford.

10   A.R. 26.  There is no minimum number of visits required to establish a treating relationship;

11   "[r]ather, the relationship is better viewed as a series of points on a continuum reflecting the

12   duration of the treatment relationship and the frequency and nature of the contact."  *Benton ex rel.*

13   *Benton v. Barnhart*, 331 F.3d 1030, 1038 (9th Cir. 2003) (quoting *Ratto v. Sec'y, Dep't of Health*

14   *& Human Servs.*, 839 F. Supp. 1415, 1425 (D. Or. 1993) (noting "the treating physician is

15   employed to cure, and also has a greater opportunity to know and observe the patient over the

16   course of time.")).  For example, in *Ghokassian v. Shalala*, 41 F.3d 1300, 1303 (9th Cir. 1994),

17   the Ninth Circuit held that a physician who had seen the claimant only twice in a fourteen-month

18   period was entitled to deference as a treating physician, where the physician prescribed medication

19   for the claimant, referred to him as "my patient," and had the most extensive contact with the

20   claimant.  Here, at the start of the treatment relationship, Dr. Schweig saw Plaintiff three times in

21   three months in 2010.  *See* A.R. 515-35.  According to Plaintiff, she saw Dr. Schweig twice a year

22   after that, with their last visit on October 9, 2012, shortly before Dr. Schweig wrote his October

23   30, 2012 opinion.  A.R. 56, 1273.  Plaintiff sought out Dr. Schweig's specialized assistance after

24   being treated by numerous Kaiser doctors.  *See, e.g.*, Kaiser record at A.R. 812 ("[Plaintiff] . . .

25   [s]ees outside alternative medicine doctor at hill park in Petaluma.  Has a history of fibromyalgia

26   and [chronic fatigue syndrome] and has been to 8 primary doctors before seeing me.").  Dr.

13

27

28

United States District Court
Northern District of California

1    Schweig's two-and-a-half year treating relationship with Plaintiff is sufficient to accord his

2    opinion the weight given to treating physicians.  *Id*. at 1304.  The ALJ committed legal error to the

3    extent that the ALJ improperly categorized Dr. Schweig's opinion and failed to give it proper

4    weight.

5              The ALJ also discounted Dr. Schweig's opinion because it was unclear if Dr. Schweig

6    knew that Plaintiff had completed an Associate's Degree and internship, activities which the ALJ

7    found inconsistent with Dr. Schweig's opined limitations.  This reason is not supported by

8    substantial evidence, because the ALJ did not fully and accurately characterize the evidence

9    regarding these activities.  Plaintiff testified that it took her seven years to complete the two-year

10   Associate's Degree program, and that she could never take more than two classes at a time.  She

11   testified that she received assistance through the school's disability resources center, and that she

12   tape recorded classes and took breaks from classes as needed.  As to the 120-hour internship, the

13   ALJ noted that it was only part-time, and Plaintiff testified that it was "exhausting."  A.R. 64; *see*

14   *also* A.R. 812 (April 29, 2010 progress note noting Plaintiff "[t]rying to complete a program in

15   medical assisting and having a hard time to manage and keeps having to drop out.").  In his

16   opinion, Dr. Schweig noted that "[Plaintiff] is able to work for 1-3 days in a normal work

17   environment and then experiences markedly increased fatigue and anxiety," which is not

18   inconsistent with a part-time internship and coursework limited to no more than two classes at a

19   time.  *See, e.g., Reddick*, 157 F.3d at 722 (describing claimant's activities as "sporadic and

20   punctuated with rest," and noting that "[e]ven more prolonged undertakings might be consistent

21   with the disease, as [chronic fatigue syndrome] is characterized by periods of exacerbation and

22   remission." (citation omitted)); *Lester*, 81 F.3d at 833 ("[o]ccasional symptom-free periods—and

23   even the sporadic ability to work—are not inconsistent with disability.").

24             The ALJ also rested on the fact that Dr. Schweig did not recommend more aggressive

25   medical treatment or refer Plaintiff for consultation with other specialists.  However, it is not clear

26   that more aggressive or different treatment would be useful, as there is no indication that there is a

27                                                    14

28

cure for CFIDS.

Defendant argues that Dr. Chen's RFC findings constitute a sufficient evidentiary basis for giving minimal weight to Dr. Schweig's opinion.  *See Tonapetyan*, 242 F.3d at 1149 (opinion of examining physician resting on independent examination of claimant alone is substantial evidence for rejecting conflicting opinion from a treating source).  First, the ALJ did not specifically reject Dr. Schweig's opinion in favor of Dr. Chen's opinions.  More importantly, nothing in the record demonstrates that Dr. Chen considered the effects of chronic fatigue syndrome on Plaintiff's functional capacity.  For example, in April 2010, Dr. Chen found that Plaintiff walked without difficulty and was in no acute distress.  A.R. 502.  Her extremities, pulses, coordination, station and gait were all within normal limits.  A.R. 503.  She had good range of motion and normal motor strength, bulk and tone.  Dr. Chen diagnosed Plaintiff with chronic pain syndrome and chronic fatigue of unknown etiology, along with diabetes mellitus type 2 and hypertension, which was under control with medications.  A.R. 502.  Dr. Chen concluded that she could stand, walk, or sit for up to six hours each in a regular workday, and that she could lift and carry up to 20 pounds occasionally and up to 10 pounds frequently.  A.R. 503.  Similarly, in October 2011, Dr. Chen wrote that his examination of Plaintiff was largely unremarkable and that Plaintiff had normal range of motion, motor strength, bulk and tone.  A.R. 635.  Dr. Chen noted that Plaintiff was having less body pain since her April 2010 exam, and concluded that she could stand, walk, or sit for up to six hours per day each and could lift up to 50 pounds occasionally and up to 25 pounds frequently.  A.R. 636.  There is no indication in Dr. Chen's opinions that he considered "the potential effects of fatigue on [Plaintiff's] functional capacity"; instead, it appears that Dr. Chen evaluated Plaintiff's ability to perform work "on the basis of . . . orthopedic factors only."  *See Reddick*, 157 F.3d at 724 (finding ALJ's finding that claimant could perform light work "was not supported by substantial evidence as it failed to account for the effects of fatigue on Claimant's ability to function in the workplace"; ALJ relied almost exclusively on opinions by doctors who did not consider the effects of fatigue on functional capacity and did not asses ability to perform

15

1    sustained work).  Additionally, the extent to which Dr. Chen reviewed Plaintiff's medical file is

2    unclear, since he handwrote descriptions of what appears to be only five medical records and/or

3    diagnoses dated in 2008 and 2009.

4            In sum, upon review of the record, the court finds that the ALJ did not provide specific and

5    legitimate reasons supported by substantial evidence to reject Dr. Schweig's opinion.

6        **B.  The ALJ's Credibility Determination**

7            Plaintiff next challenges the ALJ's determination that she was not fully credible.

8            **1.  Legal Standard**

9            In general, credibility determinations are the province of the ALJ.  "It is the ALJ's role to

10   resolve evidentiary conflicts.  If there is more than one rational interpretation of the evidence, the

11   ALJ's conclusion must be upheld." *Allen v. Sec'y of Health & Human Servs.*, 726 F.2d 1470,

12   1473 (9th Cir. 1984).  An ALJ is not "required to believe every allegation of disabling pain" or

13   other nonexertional impairment.  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989) (citing 42

14   U.S.C. § 423(d)(5) (A)).  Nevertheless, the ALJ's credibility determinations "must be supported

15   by specific, cogent reasons." *Reddick*, 157 F.3d at 722 (citation omitted).  If an ALJ discredits a

16   claimant's subjective symptom testimony, the ALJ must articulate specific reasons for doing so.

17   *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006).  In evaluating a claimant's credibility, the

18   ALJ cannot rely on general findings, but "must specifically identify what testimony is credible and

19   what evidence undermines the claimant's complaints." *Id.* at 972 (quotations omitted); *see also*

20   *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (ALJ must articulate reasons that are

21   "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit

22   claimant's testimony.").  The ALJ may consider "ordinary techniques of credibility evaluation,"

23   including the claimant's reputation for truthfulness and inconsistencies in testimony, and may also

24   consider a claimant's daily activities, and "unexplained or inadequately explained failure to seek

25   treatment or to follow a prescribed course of treatment." *Smolen v. Chater*, 80 F.3d 1273, 1284

26   (9th Cir. 1996).

27                                                        16

28

United States District Court
Northern District of California

1    The determination of whether or not to accept a claimant's testimony regarding subjective

2    symptoms requires a two-step analysis.  20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at 1281

3    (citations omitted).  First, the ALJ must determine whether or not there is a medically

4    determinable impairment that reasonably could be expected to cause the claimant's symptoms.  20

5    C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82.  Once a claimant produces

6    medical evidence of an underlying impairment, the ALJ may not discredit the claimant's

7    testimony as to the severity of symptoms "based solely on a lack of objective medical evidence to

8    fully corroborate the alleged severity of" the symptoms.  *Bunnell v. Sullivan*, 947 F.2d 341, 343,

9    346-47 (9th Cir. 1991) (en banc) (citations omitted).  Absent affirmative evidence that the

10   claimant is malingering, the ALJ must provide specific "clear and convincing" reasons for

11   rejecting the claimant's testimony.  *Smolen*, 80 F.3d at 1283-84.

12              **2.    Analysis**

13   The ALJ found that Plaintiff's "medically determinable impairments could reasonably be

14   expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the

15   intensity, persistence and limiting effects of these symptoms are not entirely credible."  A.R. 24.

16   The ALJ did not conclude that Plaintiff was a malingerer, and Dr. Schweig specifically opined that

17   Plaintiff is not a malingerer.  A.R. 1274.

18   The ALJ gave several reasons for not fully crediting Plaintiff's testimony.  These reasons

19   do not constitute clear and convincing evidence sufficient to reject Plaintiff's testimony.  First, the

20   ALJ noted that Plaintiff's voluminous medical records indicated "only symptomatic treatment,"

21   and that Plaintiff's diabetes and hypertension have been well-controlled with medication.  A.R. 24.

22   As noted above, there is a great deal of evidence that Plaintiff sought medical attention for the

23   recognized symptoms of chronic fatigue syndrome.  *See, e.g.*, A.R. 374, 377, 420, 426, 661, 669,

24   675, 680, 704, 707, 720, 762, 829, 1104.  This evidence appears to support, not undermine,

25   Plaintiff's testimony.  There is no indication that further treatment for chronic fatigue syndrome

26   would be fruitful.  "A claimant cannot be discredited for failing to pursue non-conservative

27                                                          17

28

United States District Court
Northern District of California

1    treatment options where none exist." *Lapeirre-Gutt v. Astrue*, 382 Fed. Appx. 662, 664 (9th Cir.

2    2010).  As to Plaintiff's diabetes and hypertension, there is no indication that any medical source

3    considered these conditions to be disabling.  Plaintiff's treating physician opined that Plaintiff's

4    CFIDS rendered her incapable of working.  The ALJ did not explain how Plaintiff's credibility is

5    undermined by the fact that her diabetes and hypertension  are well-controlled.

6            Next, the ALJ concluded that Plaintiff's ability to take courses to obtain an Associate's

7    Degree and to participate in a part-time internship was "indicative of a much greater capacity for

8    work activity" and that Plaintiff's numerous detailed emails to her health care providers was

9    "indicative of a level of cognitive processing suggestive of a much greater capacity" for work than

10   Plaintiff was willing to acknowledge.  A.R. 24-25.  As discussed above, the ALJ's description of

11   Plaintiff's medical assistant training and internship glosses over the fact that Plaintiff took seven

12   years to complete a two-year program, and that she finished the 120-hour internship on a part-time

13   basis and with difficulty.  To the extent Plaintiff's emails to her health care providers indicate an

14   ability to engage in cognitive processing, they do not undermine her credibility.  Plaintiff testified

15   about the effects of physical exhaustion on her ability to work, along with anxiety, depression, and

16   insomnia.  She did not testify about problems with her "cognitive processing."  The ALJ did not

17   explain how Plaintiff's attempts to manage her health care by emailing her providers undercut her

18   credibility.

19           The ALJ also found that Plaintiff's activities of daily living indicated that Plaintiff's severe

20   impairments were "not as limiting as alleged."  A.R. 25.  The ability to perform some household

21   chores does not preclude a finding of disability.  *See, e.g., Reddick*, 157 F.3d at 722; *Orn*, 495 F.3d

22   at 639.  Plaintiff's activities do not contradict her other testimony, and in fact appear consistent

23   with chronic fatigue syndrome, as she testified that her activities were punctuated with rest.  For

24   example, she testified that she has to go back to bed to rest after getting up and doing chores such

25   as putting dishes in the dishwasher, making her bed, or feeding her pets.

26           The court concludes that the ALJ did not provide clear and convincing reasons for

27                                                      18

28

rejecting Plaintiff's testimony and evidence regarding the severity of her impairments, including chronic fatigue.

### C.   Remand for Payment of Benefits

Plaintiff asks the court to issue an order for payment of benefits, rather than remand the case to the ALJ to conduct further proceedings.

A court may remand a disability case for further proceedings "if enhancement of the record would be useful."  It may only remand for benefits, on the other hand, "where the record has been fully developed and further administrative proceedings would serve no useful purpose." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).  In determining whether to remand for benefits, the Ninth Circuit has devised a "three-part credit-as-true standard." *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).  Each part of the standard must be satisfied in order for a court to remand to an ALJ with instructions to calculate and award benefits:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Id*.  A court is required to remand for further development of a disability case when, "even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Id*. at 1021.

Here, the record has been fully developed, and there is no indication that further administrative proceedings would serve a useful purpose.  As discussed above, the ALJ did not provide legally sufficient reasons for rejecting Dr. Schweig's opinion and Plaintiff's testimony about the effect of her impairments on her functioning.  If this evidence were credited, the ALJ would be required to find Plaintiff disabled.  Dr. Schweig opined that Plaintiff was incapable of even low-stress jobs due to her fatigue.  He stated that Plaintiff would need to take three to four unscheduled breaks during an eight-hour workday, and that she would have to rest for two hours

19

before returning to work and would need to lie down.  He also opined that she would likely be absent from work for three or more days per month.  At the hearing, Plaintiff's representative asked the vocational expert whether a claimant who was "absent more than three days in a month" would be able to work.  The vocational expert responded that the individual would not be able to sustain work.  A.R. 77.  Plaintiff meets all three conditions of the credit-as-true rule, and the court is satisfied that there is not a "serious doubt that [Plaintiff] is, in fact, disabled," *Garrison*, 759 F.3d at 1021.  The court therefore remands the case to the Commissioner to award Plaintiff her disability benefits.

## VII.   CONCLUSION

For the foregoing reasons, the court finds that the ALJ's decision was not supported by substantial evidence in the record.  Accordingly, the court remands this case for payment of benefits.

**IT IS SO ORDERED.**

Dated: February 24, 2016



Donna M. Ryu
United States Magistrate Judge

20